# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALEXANDRA FIGUEROA** | **:  CIVIL ACTION** |
| | : |
| **v.** | : |
| | **:  NO. 17-4736** |
| **NANCY A. BERRYHILL** | : |

## MEMORANDUM

**KEARNEY, J.**                                                            **June 19, 2018**

Alexandra Figueroa asks we review the Social Security Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits. She seeks benefits claiming she cannot work because of speech problems, attention deficit hyperactivity disorder, and other social and intellectual limitations while a minor and now as a twenty-two year old high school graduate. An administrative law judge evaluated and weighed the evidence adduced from several mental-health professionals and, after a detailed review, denied Ms. Figueroa's appeal of the Commissioner's denial of benefits. After the Appeals Council denied her request for review, Ms. Figueroa properly sought our review of the administrative law judge's decision. She argues the administrative law judge failed to properly consider and weigh: her education level; her meeting, medically equaling, or functionally equaling the Listing of Impairments; the opinion of the mental-health professional who evaluated her; and, her mother's written statement. After careful review of the record and mindful of our limited scope of review, we find substantial evidence for each of the administrative law judge's detailed findings requiring we deny Ms. Figueroa's petition for review in the accompanying Order.

## I.   Background

Alexandra Figueroa is a twenty-two-year-old woman who suffered from a learning disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder before graduating high school.[1]   Since turning eighteen, Ms. Figueroa has continued to have these severe impairments.[2] Ms. Figueroa never worked.[3]

### A. Ms. Figueroa's educational and medical history.

Ms. Figueroa grew up in both Puerto Rico and mainland United States.[4]  In 1998, Leida Rodriguez, a speech-language pathologist in Puerto Rico, diagnosed severe communication problems.[5]   Ms. Rodriguez also noted a delay in Ms. Figueroa's vocabulary.[6]   In 2002, Maricarmen Rodriguez, another speech-language pathologist in Puerto Rico, found Ms. Figueroa had a moderate speech-language disorder characterized by a slight delay in language, and a moderate delay in the intelligibility of her speech.[7]

In 2004, Ms. Figueroa moved from Puerto Rico to Perth Amboy, New Jersey with her mother after her parents divorced.[8]  In 2008, Ms. Figueroa enrolled in the Philadelphia School District.[9]  In 2010, Ms. Figueroa moved from Philadelphia back to Puerto Rico.[10] In 2013, she returned to Philadelphia and started 12th grade at Agora Cyber Charter School.[11]

Ms. Figueroa had an individualized education program ("IEP") report at Agora Cyber Charter School.[12]  Her IEP noted she spent 95% of her day in the regular classroom.[13]  She made "consistent and substantial progress toward her goals."[14]   In his evaluation, examining psychologist Dr. Patrick McHugh, Ph.D. addressed Ms. Figueroa's education.[15]   He recommended Ms. Figueroa continue "her education in her local school district until age 21 with emphasis on vocational training."[16]

2

In 2008, a Philadelphia School District IEP Team reviewed Ms. Figueroa's scores on the Wechsler Intelligence Scale for Children-Fourth Edition.[17] Her scores fell within the Low Average Range.[18] But evaluators reported a significant scatter in her subtest scores.[19] The evaluators suggested these results show Ms. Figueroa possessed more intellectual potential than she exhibited.[20] The lower IQ scores show more of "language retrieval problem rather than a language acquisition issue."[21]

Ms. Figueroa has attention deficit hyperactivity disorder ("ADHD"), diagnosed in early childhood.[22] She began taking medicine for here ADHD around age eight.[23] Disability Determination Service psychological consultant Dr. Paul Taren, Ph.D. opines Ms. Figueroa takes Adderall to control her ADHD with "good effect."[24]

Ms. Figueroa thinks she could work.[25] She enrolled in, and had almost completed, a course in cosmetology.[26] In high school, Ms. Figueroa spoke of becoming a nurse, and recognized she needed to take several post-secondary courses to become credentialed.[27] She also planned to volunteer at a local health center for 20 hours to get exposure to the health profession.[28]

**B. Ms. Figueroa's efforts to obtain benefits.**

On December 20, 2013, Ms. Figueroa's mother, Margarita Rodriguez, applied for supplemental security income on behalf of her daughter, since Ms. Figueroa had not yet reached 18 years of age.[29] The Social Security Administration has two standards of disability—a childhood standard for those under the age of 18, and an adult standard for those age 18 and above.[30] The SSA denied Ms. Figueroa's application.[31] Ms. Figueroa appealed the denial and requested a hearing before an administrative law judge.[32] On September 30, 2015, Ms. Figueroa appeared and testified before an administrative law judge.[33] Robert Savoy, an attorney for Ms.

3

Figueroa, and Steve Gumerman, Ph.D., an impartial vocational expert, appeared at the hearing.[34] On July 13, 2016, Administrative Law Judge Kathleen McDade denied Ms. Figueroa's claim.[35] After applying the five-step analysis, ALJ McDade determined Ms. Figueroa is not disabled as of December 20, 2013, the date she filed the application.[36]

ALJ McDade determined Ms. Figueroa suffered from severe impairments—a learning disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder.[37] ALJ McDade compared Ms. Figueroa's impairments to a list of impairments presumed severe enough to preclude gainful employment.[38] Under the childhood standard, before turning 18 years old, ALJ McDade found Ms. Figueroa's impairments did not meet, medically equal, or functionally equal one of the listed impairments.[39]

Under the adult standard, since turning 18 years old, Ms. Figueroa's impairments also did not meet or medically equal one of the listed impairments.[40] ALJ McDade found Ms. Figueroa has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she "can perform work involving simple, routine tasks, simple decision making and judgments. The work should be self-paced and as low stress as possible, meaning any production requirements would be capable of being completed by the end of the work day or work shift and should not involve assembly lines, tandem work or team work. There should be no contact with the general public but frequent interaction with co-workers and supervisors would be permitted."[41] Considering Ms. Figueroa's age, education, work experience, and residual functioning capacity, ALJ McDade found she could perform jobs existing in significant numbers in the national economy.[42]

ALJ McDade assigned little weight to the opinion of examining psychologist Janet Horwitz, Psy.D., who provided a Medical Source Statement, and Ms. Figueroa's mother,

4

Margarita Rodriguez.[43]   Dr. Horwitz diagnosed ADHD and language disorder, and opined Ms. Figueroa's impairments might significantly interfere with her ability to function on a daily basis.[44]   ALJ McDade assigned great weight to examining psychologist Dr. McHugh, who opined Ms. Figueroa "has mild limitations for interacting appropriately with the public, supervisors, and co-workers as well as responding appropriately to usual work situations and to changes in a routine setting."[45]   ALJ McDade also assigned great weight to Dr. Taren, who opined Ms. Figueroa "has a less than marked limitation for Attending and Completing Tasks as she has had a good effect with taking Adderall."[46]   Ms. Figueroa requested the Appeals Council review ALJ McDade's decision.[47]   The Appeals Council affirmed ALJ McDade's July 13, 2016 decision and denied Ms. Figueroa's request for review.[48]

## II.    Analysis

Ms. Figueroa timely filed a petition for review in this Court.   She argues ALJ McDade erred in finding she: (1) has a high school education; (2) does not meet or medically equal the Listing of Impairments; and (3) does not functionally equal the Listing of Impairments.   She also argues ALJ McDade erred in giving little weight to Dr. Horwitz's and her mother Margarita Rodriguez's opinions.   We deny Ms. Figueroa's petition for review as we find ALJ McDade based her findings on substantial evidence.

Our review of an ALJ's decision is deferential and an ALJ's findings of fact are conclusive if supported by substantial evidence.[49]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[50]   Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[51]   To determine whether substantial evidence supports a factual finding, we review the

5

record as a whole.[52] We are bound by an ALJ's factual findings if supported by substantial evidence, even if we would have decided the matter differently.[53]

An ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act ("Act"), a person who has contributed to the program who suffers from a physical or mental disability is afforded insurance benefits.[54] Under Title XVI of the Act, a disabled person may also be entitled to supplemental security income.[55] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[56] A claimant is only disabled if their impairments are severe to the point it makes their previous work impossible to do or precludes any other kind of gainful work available in the national economy.[57]

We are addressing disability affecting Ms. Figueroa as a child and continuing into adulthood. The Commissioner applies a three-step evaluation to determine if a child claimant is disabled, and a five-step evaluation to determine if an adult claimant is disabled.[58] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[59] At step one, in both analyses, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[60] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two in both analyses where she is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[61] At step three in both analyses, if the claimant's impairments are severe, the Commissioner compares the impairments to the list of impairments presumed severe enough to preclude gainful employment.[62] If the claimant's impairments or its

6

equivalent matches a listed impairment, the claimant is presumed disabled.[63] The childhood standard of disability analysis ends here.[64]

Under the adult standard of disability, if the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's residual functional capacity.[65] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[66] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work, experience, and [RFC]."[67]

## A. ALJ McDade properly analyzed Ms. Figueroa's education level.

ALJ McDade describes Ms. Figueroa as having a high school education.[68] Ms. Figueroa argues her finding is not supported by substantial evidence, and this finding is not harmless error.

Unless there is contradictory evidence, the ALJ uses a claimant's numerical grade level to determine her educational abilities.[69] The ALJ determines the claimant's education when there is evidence of a disparity between the grade completed and the actual level of functioning.[70] Although there does not appear to be binding authority on point in our court of appeals, several non-binding cases in other districts and court of appeals supported ALJ McDade's reliance on the grade completed, despite evidence suggesting a disparity between the grade completed and the claimant's abilities.[71] Many workers do not read at their numerical grade level but can perform jobs requiring intellectual functioning.[72] Even though these persons may have lesser intellectual capabilities they "are not automatically 'disabled.'"[73] We cannot find ALJ McDade erred by relying upon the school district's daily evaluation leading to eventual graduation.

7

Otherwise, we would face virtually unmoored challenges to whether someone graduated high school based on differing experts' views on intellectual capacity upon graduating high school.

Ms. Figueroa has a high school diploma.[74] Her IEP report for Agora Cyber Charter School shows she spent 95% of her time in a regular classroom.[75] But an assessment conducted in 2014 shows Ms. Figueroa did not perform at 12th grade levels.[76] Her scores in reading and math demonstrate a probe level between 5th and 8th grades.[77] We appreciate Ms. Figueroa's dilemma – she graduated high school but is not functioning at a high school graduate level. Absent authority from our court of appeals or change in the Commissioner's view, we will not reverse or remand for a factually accurate finding of Ms. Figueroa graduating from high school.

Even if ALJ McDade improperly analyzed Ms. Figueroa as having a high school education, the alleged error is harmless here. The vocational expert recommended work not requiring a high school education.[78] Ms. Figueroa does not claim she is illiterate or have a marginal education, nor does she argue ALJ McDade should categorize her as such.[79]

Reviewing the entire record, there is substantial evidence to support ALJ McDade's finding Ms. Figueroa has a high school education. Also, Ms. Figueroa has at minimum a marginal education and can perform unskilled jobs.[80] Ms. Figueroa can perform the work found by the vocational expert, so ALJ McDade's imputing a high school education to Ms. Figueroa is harmless error, especially when she has a high school diploma.

## B. There is substantial evidence for ALJ McDade's finding Ms. Figueroa does not meet or medically equal the Listing of Impairments.

ALJ McDade found Ms. Figueroa did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments, either as a minor or as an adult.[81] The Listing outlines those impairments presumed severe enough to preclude gainful employment.[82] Ms. Figueroa argues ALJ McDade did not adequately explain her findings. She

8

also takes issue with ALJ McDade not addressing the four domains individually. Taken together, she argues, these alleged shortcomings demonstrate the ALJ McDade failed to meet the standard outlined in *Burnett Commissioner of Social Security Administration*, requiring the ALJ explain her findings.*[83]*

The standard in *Burnett* "does not require the ALJ to use particular language or adhere to a particular format in conducting [her] analysis."[84] Instead, the ALJ must make sure there is "sufficient development of the record and explanation of findings" for meaningful review.[85] ALJ McDade satisfies the standard once she provides a "discussion of the evidence" and an "explanation of reasoning" for her conclusion.[86] When evaluating a claimant's medical issues, the ALJ will consider type, dosage, effectiveness, and side effects of medications.[87] ALJ McDade must adequately explain the relationship between Ms. Figueroa's IQ scores and her ADHD, and the Listing of Impairments.

ALJ McDade relied on treating notes in her findings. Ms. Figueroa's IQ scores are too high to meet the criteria of Listings 112.05 and 12.05 (intellectual disorders). Ms. Figueroa concedes these findings are correct. But she claims she "arguably equaled" a Listing, relying on the Program Operations Manual System ("POMS"). But POMS has no legal effect.[88] Instead, it is written for internal reference.[89] Our court of appeals advises "agency interpretive guidelines do not rise to the level of a regulation and do not have the effect of law."[90] So ALJ McDade's disregard of POMS does not undermine the substantial evidence she relied on when making her determination.

ALJ McDade also relied on treating notes in findings on the effect of Ms. Figueroa's ADHD. ALJ McDade found Ms. Figueroa did not meet the criteria of Listing 112.11 (neurodevelopmental disorders), explaining the decision with reference to the limitations the

claimant must demonstrate.[91] This finding is supported in Dr. Taren's domain evaluation, which is a tool to determine "all of what a child can or cannot do."[92] Ms. Figueroa had a less than marked rating for Acquiring and Using Information, a less than marked rating for Attending and Completing Tasks, and no limitation for Interacting and Relating With Others.[93] ALJ McDade's decision is also supported in Dr. Horwitz's evaluation, finding Ms. Figueroa's recent and remote memory skills are only mildly impaired, her attention and concentration are only mildly impaired, and she is goal-directed.[94] Dr. Horwitz's evaluation includes a social history, detailing Ms. Figueroa's responsibilities at her home and her ability to perform everyday tasks, demonstrating her capabilities.[95] And Dr. McHugh opined Ms. Figueroa's cognitive function "fell within the normal range."[96]

Ms. Figueroa claims ALJ McDade is dismissive of her ADHD symptoms. But this impairment and its symptoms are acknowledged in ALJ McDade's findings.[97] To the extent ADHD affects Ms. Figueroa's functional ability, as Dr. Taren pointed out, Adderall is effective treatment.[98]

Reviewing the entire record, there is substantial evidence for ALJ McDade's finding Ms. Figueroa does not meet or medically equal the Listing of Impairments. ALJ McDade sufficiently developed the record and explained her findings when comparing Ms. Figueroa's IQ scores and her ADHD to the Listing.

## C. There is substantial evidence for ALJ McDade's finding Ms. Figueroa does not functionally equal the Listing of Impairments.

Ms. Figueroa argues ALJ McDade did not adequately explain her finding of Ms. Figueroa's less-than-marked impairment in any of the six domains as a minor. Specifically, she argues ALJ McDade did not adequately explain her findings in the domains of Acquiring and Using Information, and Attending and Completing tasks.

10

Her argument concerns step three in the children's analysis, where ALJ McDade considers "all the relevant factors" in deciding whether an impairment or combination of impairments functionally equals a Listing.[99] Functioning is determined by looking at how "appropriately, effectively, and independently" the claimant performs activities relative to other children of the same age without impairments.[100] ALJ McDade looks to six domains, with the goal of determining "all of what a child can or cannot do."[101]

The treating notes show Ms. Figueroa's Acquiring and Using Information rating is adequately supported by the record. But Dr. Taren's domain evaluation supports ALJ McDade's assessment.[102] Ms. Figueroa had a less-than-marked rating in this domain.[103] And Ms. Figueroa's IEP report for Agora Cyber Charter School shows she spent 95% of her day in the regular classroom.[104]

ALJ McDade also appropriately analyzed Ms. Figueroa's Attending and Competing Tasks rating. Dr. Taren's evaluation supports this finding, showing a less-than-marked rating in this domain.[105] But ALJ McDade provided several other pieces of evidence to support her assessment, all supported by the full record. First, as Dr. Taren pointed out, Adderall controls the symptoms of Ms. Figueroa's ADHD with "good effect."[106] Second, Ms. Figueroa spent the great majority of her day in the regular classroom and had no behavioral problems.[107] Third, Dr. McHugh noted Ms. Figueroa is able to understand, remember, and carry out complex instructions.[108] Last, Ms. Figueroa is capable of a full range of daily tasks and activities.[109]

Reviewing the entire record, there is substantial evidence for ALJ McDade's finding Ms. Figueroa does not functionally equal the Listing of Impairments.

.

11

#### D. ALJ McDade did not erroneously weigh Dr. Horwitz's opinion.

ALJ McDade gave less weight to Dr. Horwitz's opinion because of inconsistency in her assessment, and an overreliance on Ms. Figueroa and her mother's reports of Ms. Figueroa's symptoms.[110] Ms. Figueroa argues ALJ McDade improperly weighed Dr. Horwitz's opinion, and did not take into account Ms. Figueroa's cognitive difficulties. Ms. Figueroa also argues Dr. Horwitz's conclusion is consistent with the adduced evidence.

A treating source's opinion is entitled controlling weight "when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record."[111] In rejecting a treating source's opinion, the ALJ may not make "speculative inferences from medical reports" and may not reject a treating source's opinion "due to his or her own credibility judgments, speculation or lay opinion."[112] While the ALJ is not required to reference every relevant treatment note in the record, the ALJ must adequately explain her reasoning when rejecting a treating physician's opinion.[113] It cannot be for "no reason or for the wrong reason."[114]

Our court of appeals instructs us when a treating source's notes, analyzed as a whole, contradict the treating source's opinion on a claimant's ability to work, the ALJ "may properly rely on those notes in determining the opinion is entitled to little or no weight."[115] While the ALJ is "required to set forth the reasons for his [or her] decision," these reasons need not be exhaustive.[116] Rather, the ALJ must do more than make broad conclusions without citing factual support in the record, or draw conclusions based solely on vague explanations without citations to the record.[117] An ALJ may reject a treating source's opinion in favor of a non-examining source if the latter is more consistent with the record.[118] The ultimate determination of the

12

claimant's RFC is the province of the ALJ upon an independent analysis of the relevant evidence.[119]

ALJ McDade adequately explained assigning little weight to Dr. Horwitz's medical opinion including through citations to the record. She found Dr. Horwitz used varied and undefined terms when assessing the domains, which do not correspond to any particular degree of deficit.[120] For Acquiring and Using Information, Dr. Horwitz's treating notes use terms such as "impairments in expressive and receptive language" without defining such terms.[121] For Interacting and Relating With Others, Dr. Horwitz opines Ms. Figueroa has difficulties making close connections but relates age-appropriately.[122] These terms do not mirror a degree of deficit (such as moderate or severe).

ALJ McDade concluded the domains assessment is at odds with Dr. Horwitz's mental status examination. The treating notes show Ms. Figueroa did "very poorly" for Acquiring and Using Information, and "[n]ot well" for Attending and Completing Tasks.[123] Dr. Horwitz also opines Ms. Figueroa's recent and remote memory skills are only mildly impaired, her attention and concentration is only mildly impaired, and she is goal-directed.[124] This discrepancy supports ALJ McDade's conclusion.

Ms. Figueroa argues ALJ McDade inappropriately speculated in concluding Dr. Horwitz's opinion is entitled to less weight. ALJ McDade stated Dr. Horwitz's assessment seemed "based largely on the reported symptoms/history, rather than clinical findings."[125] Multiple references to Ms. Figueroa's and her mother's reports throughout the assessment supports ALJ McDade's conclusion. In the evaluation's mental status examination, Dr. Horwitz refers to the claimant reporting difficulty comprehending words.[126] In the medical and developmental history section, Dr. Horwitz cites Ms. Figueroa's mother.[127] In the current

13

functioning section, Dr. Horwitz relies in large part on reports from Ms. Figueroa and her mother.[128]

Based on Dr. Horwitz's inconsistency and the substance of her assessment, ALJ McDade could and did find Dr. Horwitz's opinion is entitled to little weight. ALJ McDade provided an adequate explanation, based on the record, for assigning little weight to Dr. Horwitz's opinion.

### E. ALJ McDade properly analyzed Margarita Rodriguez's opinion.

Ms. Figueroa argues ALJ McDade's reasons for discounting her mother Margarita Rodriguez's opinion are not supported by the record. Ms. Figueroa claims ALJ McDade improperly discredited Ms. Rodriguez's statements regarding the intensity and limiting effects of Ms. Figueroa's symptoms on her ability to work.

An ALJ must give great weight to subjective testimony of the claimant's inability to perform even light or sedentary work when this testimony is supported by competent medical evidence.[129] An ALJ "must give 'subjective complaints serious consideration…and make specific findings of fact, including credibility as to [a claimant's] residual functional capacity.'"[130] Statements concerning a claimant's symptoms must be carefully considered, but the ALJ is not required to credit them.[131] An ALJ can reject such claims if she does not find them credible.[132]

ALJ McDade's determination of Ms. Rodriguez's credibility is supported by substantial evidence. ALJ McDade determined Ms. Rodriguez's statements regarding the intensity and limiting effects of Ms. Figueroa's symptoms with regard to her ability to work were not entirely credible because of her daily activities.

To the extent ALJ McDade must give great weight to Ms. Rodriguez's subjective testimony regarding Ms. Figueroa's inability to finish tasks or stay on task for long periods of

14

time, she is only required to give such testimony great weight when it is supported by competent medical evidence. Ms. Figueroa cites Dr. Horwitz's report as support for Ms. Rodriguez's claims. But the support in Dr. Horwitz's report comes from a description of Ms. Figueroa provided by Ms. Rodriguez herself, not from Dr. Horwitz's own examination.[133] Dr. Horwitz notes Ms. Figueroa's attention and concentration are mildly impaired.[134] She described Ms. Figueroa's cognitive functioning as low average to average.[135] This assessment does not support Ms. Rodriguez's claims of Ms. Figueroa's inability to work.

ALJ McDade did not find Ms. Rodriguez's testimony credible, based on Ms. Figueroa's own testimony about her everyday tasks and responsibilities. She helps around the house, socializes with friends and family, attends church, and follows television programs.[136] She admits she can work a job involving simple tasks. She had almost completed a course in cosmetology. ALJ McDade relied on substantial evidence in the record in assigning little weight to Ms. Rodriguez's testimony.

Ms. Figueroa again points to POMS. By combining select statements from Ms. Rodriguez and consulting POMS, Ms. Figueroa claims she would be determined disabled. But the disregard of POMS does not undermine the substantial evidence relied on by ALJ McDade in making its determination.[137]

Reviewing the entire record, ALJ McDade found Ms. Rodriguez's testimony regarding the limiting effects of Ms. Figueroa's symptoms not entirely credible, and her decision is supported by substantial evidence.

15

## F. Conclusion

In the accompanying order, we deny Ms. Figueroa's Petition for Review and dismiss her complaint. ALJ McDade faced the challenging task of reviewing extensive medical evidence spanning several years and determining whether Ms. Figueroa is capable of working. ALJ McDade acknowledged Ms. Figueroa's limitations from a learning disorder, borderline intellectual functioning, and attention deficit hyperactivity disorder, but found Ms. Figueroa is capable of completing simple, routine work with no contact with the public and frequent interaction with co-workers. Our review today is not based on whether we would arrive at the same conclusion as ALJ McDade. Our role is only to determine whether the ALJ McDade's findings are based on substantial evidence from the record after considering the weight assigned to the adduced evidence. ALJ McDade provided adequate reasons supporting the assessment of Ms. Figueroa's education; her meeting, medically equaling, or functionally equaling the Listing of Impairments; and the assessment of weight to the opinions of Dr. Horwitz and Margarita Rodriguez, and supported her analysis with citations to the record. We deny Ms. Figueroa's Petition for Review as we find ALJ McDade's findings supported by substantial evidence.

---

[1] ECF Doc. No. 9, Social Security Administrative Record ("R.") at R. 26.

[2] R. 33.

[3] R. 36.

[4] R. 323.

[5] R. 252.

[6] R. 252.

[7] R. 265.

[8] *See* R. 300, 323.

[9] R. 299.

[10] R. 323.

[11] *Id.*

[12] R. 184

[13] R. 192

[14] R. 195

[15] R. 426.

[16] *Id.*

[17] R. 300, 301.

[18] R. 301.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] R. 419, 423.

[23] R. 23.

[24] R. 52.

[25] R. 27.

[26] *Id.*

[27] R. 208.

[28] *Id.*

[29] R. 21, 56.

[30] 20 CFR §§ 416.924(f), 416.920(a)(2).

[31] *Id.*

[32] *Id.*

[33] R. 21.

[34] R. 21, 42.

[35] R. 22.

[36] *Id.*

[37] R. 26, 33.

[38] 20 CFR §§ 404.1520(a)(4)(iii), 416.924(d), 416.920(a)(4)(iii).

[39] R. 26.

[40] R. 34.

[41] *Id.*

[42] R. 37.

[43] R. 35, 36.

[44] R. 28.

[45] R. 29, 36

[46] R. 36.

[47] R. 1.

[48] *Id.*

[49] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[50] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[51] *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotations omitted).

[52] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

[53] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[54] 42 U.S.C. § 423(a)(1)(D); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[55] 42 U.S.C. § 1381 *et seq*.

[56] 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A).

[57] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[58] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004), 20 CFR §§ 416.924(a), 20 CFR 416.920(a)(4).

[59] 20 CFR §§ 404.1520(a)(4), 416.924(a)(4), 416.920(a)(4).

[60] *Id.* §§ 404.1520(a)(4)(i), 416.924(b), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[61] *Id.* §§ 404.1520(a)(4)(ii), 416.924(c), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[62] *Id.* §§ 404.1520(a)(4)(iii), 416.924(d), 416.920(a)(4)(iii).

[63] *Id.*

[64] *See* 20 CFR § 416.924.

[65] 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[66] *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[67] 20 CFR §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Plummer*, 186 F.3d at 428.

[68] R. 36.

[69] 20 CFR §§ 416.964(b), 404.1564(b).

[70] *See* 20 CFR §§ 416.964 (b), 404.1564(b).

[71] *See McCune v. Astrue*, No. 12–3884, 2014 WL 1022487 at *7 (N.D. Ala. Mar. 14, 2014) (finding the ALJ did not err in concluding the individual had a high school education despite attending special education classes and trouble reading and writing); *Perez v. Barnhart*, 415 F.3d 457, 462-63 (5th Cir. 2005) (finding substantial evidence of a high school education even though the individual had been enrolled in special education classes, had trouble spelling, and coud not

fill out a job application); *Lipson v. Barnhart*, 347 F. Supp. 2d 1182, 1187-88 (M.D. Ala. 2004) (affirming the ALJ's determination of imputing a 10th grade education to an individual who read at a 3rd grade level because she completed 10th grade and held a range of jobs requiring intellectual functioning).

[72] *See Lipson*, 347 F. Supp. 2d at 1187.

[73] *Id.*

[74] R. 34.

[75] R. 192.

[76] R. 352.

[77] *Id.*

[78] R. 228.

[79] 20 CFR §§ 416.964(b)(1)-(2), 404.1564(b)(1)-(2). (Defining an illiterate person as one with "little or no formal schooling," and a marginal education as "formal schooling at a 6th grade level or less.")

[80] *See* R. 351.

[81] R. 26, 34.

[82] *Id.* §§ 404.1520(a)(4)(iii), 416.924(d), 416.920(a)(4)(iii).

[83] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

[84] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d 112, 119-20).

[85] *Id.*

[86] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones*, 364 F.3d at 501, 505 & n.3).

[87] 20 C.F.R. § 416.929(c)(3)(iv).

[88] *See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004).

[89] *Id.*

[90] *Mercy Catholic Med. Ctr.*, 380 F.3d at 155 (citing *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 185 (3d Cir. 2000) (internal quotation marks omitted)).

[91] R. 26.

[92] § 416.926a(b)

[93] R. 52.

[94] R. 313-14.

[95] R. 314.

[96] R. 425.

[97] *See* R. 26, 34.

[98] R. 52.

[99] 20 CFR § 416.926a(a).

[100] § 416.926a(b).

[101] *Id.*

[102] R. 52

[103] *Id.*

[104] R. 192

[105] R. 52.

[106] *Id.*

[107] R. 52, 192.

[108] R. 2.

[109] R. 314.

[110] R. 36.

[111] *Miller v. Berryhill*, No. 16-00521, 2017 WL 3648494, at *3 (E.D. Pa. Aug. 22, 2017) (citing 20 C.F.R. § 416.927(c)(2)).

[112] *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation marks omitted).

[113] *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 176 (3d Cir. 2015) (citing *Fargnoli*, 247 F.3d at 42 and Sykes v. Apfel, 228 F.3d 259, 266 & n.9 (3d Cir. 2000)).

[114] *Morales*, 225 F.3d at 317 (internal quotation marks omitted).

[115] *Smith v. Astrue*, 961 F. Supp. 2d 620, 643 (D. Del. 2013) (citing *Dula v. Barnhart*, 129 F. App'x 715, 719 (3d Cir. 2005)); *Humphreys v. Barnhart*, 127 F. App'x 73, 76 (3d Cir. 2005).

[116] *Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 120 (3d Cir. 2016) (quoting *Burnett*, 220 F.3d at 119 (alteration in original)).

[117] *See Gross*, 653 F. App'x at 120-21.

[118] *Salerno v. Comm'r of Soc. Sec.*, 152 F App'x 208, 209 (3d Cir. 2005); *Hudson v. Comm'r of Soc. Sec.*, 93 F. App'x 428, 431 (3d Cir. 2004).

[119] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011).

[120] R. 36.

[121] R. 307.

[122] R. 308.

[123] R. 307-08.

[124] R. 313-14.

[125] *Id.*

[126] R. 313.

[127] R. 312.

[128] R. 311-12.

[129] *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 150 (3d Cir. 2010) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979))

[130] *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)).

[131] *Chandler*, 667 F.3d at 363 (citing SSR 96-7p, 1996 WL 374186 (S.S.A. 1996)). S.S.R. 16-3 superseded S.S.R. 96-7p on October 25, 2017. Here, the ALJ relied on S.S.R. 96-7p in her decision, which remained in effect.

[132] *Schaudeck*, 181 F.3d at 429.

[133] R. 312.

[134] R. 314.

[135] *Id.*

[136] R. 314, 425

[137] *See Mercy Catholic Med. Ctr.*, 380 F.3d at 155.